\*NOT FOR PUBLICATON\*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WAEL NABELSI,<br><br>             Plaintiff,<br><br>     v.<br><br>HOLMDEL TOWNSHIP, KEVIN GALLOGLY, LINDSAY MEEHAN, and JOHN and JANE DOE(S) 1-10 (fictitious persons) and/or entities yet to be identified),<br><br>             Defendants. | No. 20-20702 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

Wael Nabelsi ("Plaintiff") brings suit against Holmdel Township, Kevin Gallogly, Lindsay Meehan, and various fictitious persons/entities (collectively, "Defendants"), alleging that they falsely arrested him in violation of 42 U.S.C. § 1983 and equivalent state laws. Defendants move to dismiss, arguing mainly that the arresting officer had probable cause for the arrest insofar as he relied on a facially valid warrant. For the following reasons, I **GRANT** Defendants' dismissal motion, **DISMISS** Nabelsi's Complaint with prejudice as to the federal claims, and decline to exercise supplemental jurisdiction over the state law claims. The statutes of limitation associated with the remaining state law claims are **TOLLED** for thirty (30) days to permit Nabelsi time to refile in state court, should he wish to do so pursuant to 28 U.S.C. § 1367(d).[1]

---

[1]      Nabelsi vaguely references a cross-motion for an extension of time to notify Defendants of his state law claims under the Tort Claims Act, Pl. Br., at 1, but he has not filed such a motion. Nabelsi has instead requested leave to "make a curative amendment to the pleadings." Pl. Br., at 38-39. Regardless, the extension motion Nabelsi references must be filed in state court. N.J.S.A. § 59:8-9; *id.* § 59:8-9 ("A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after

1

## I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This dispute stems from a family court proceeding. On August 23, 2019, Nabelsi's wife obtained a Temporary Restraining Order ("TRO") prohibiting Nabelsi from entering their residence or contacting their children pending a final hearing on domestic violence allegations. Compl., ¶¶ 16-17.[2] The TRO barred Nabelsi from contacting his wife, including "making or causing anyone else to make harassing communications" with her. Nabelsi could retrieve his belongings from his residence if accompanied by a police officer. *Id.* ¶¶ 19-20.

Notwithstanding the TRO, on August 23, 2019, Nabelsi's wife received a call from someone purporting to be Nabelsi's attorney. The caller stated that Nabelsi wanted to see his children before the TRO hearing. Nabelsi's wife said she would think about it, then called the Holmdel Police Department ("HPD") to report the call. Vincent Imperato, an Officer with HPD who is not named as a defendant, called Nabelsi in response and asked him to come to headquarters. At first, Nabelsi agreed, but shortly thereafter, he retracted and instead gave Officer Imperato the phone number for his attorney, which happened to be the same as the number Nabelsi's wife reported earlier. As well, when questioned on the phone, Nabelsi refused to answer whether he authorized his lawyer to call his wife and would not provide his new address. After attempting to reach Nabelsi's attorney multiple times to no avail, Officer Imperato applied for a

---

accrual of his claim."). The motion must also be accompanied by an affidavit demonstrating extraordinary circumstances. N.J.S.A. § 59:8-9.

2      I consider the allegations in Nabelsi's Complaint as well as "exhibits attached to [it] and matters of public record," such as Nabelsi's arrest record, the warrant issued against him for contempt of court, and the probable cause affidavit. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). I also consider "undisputedly authentic document[s] that [Defendants] attach[] as an exhibit to [their] motion to dismiss," *id.* at 1196, and extrinsic documents integral to the Complaint, such as written correspondence with HPD/Meehan, which Nabelsi references. *Lum v. Bank of America*, 361 F.3d 217, 221 n.3 (3d Cir. 2003); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Shelley v. Wilson*, 339 Fed. App'x. 136, 137 n.2 (3d Cir. 2009).

warrant for contempt, suspecting that Nabelsi violated the TRO by causing his lawyer to call his wife about access to their children. Lindsay Meehan, the Municipal Court Administrator for Monmouth County, entered the warrant that day, which identified Nabelsi's name, address, social security number, and phone number in addition to the date, time, and location of the incident underlying the contempt charge. Def. Br., Exs. D-E.

A week later, on August 27, 2019, Nabelsi called HPD to retrieve his belongings from his residence. Compl., ¶ 37. He met Officer Kevin Gallogly, who, upon conducting a records check, noticed the outstanding contempt warrant and arrested Nabelsi. In response, Nabelsi's attorney contacted Meehan. *Id.* ¶¶ 31-37. 48-49. Meehan then contacted Officer Gallogly to inform him that the contempt charge would likely be dismissed. Nabelsi was released after spending 46 minutes in custody. *Id.* ¶¶ 45-47. The prosecutor assigned to Nabelsi's case administratively terminated the contempt charge the next day, *id.* ¶ 50, and wrote in a letter that Nabelsi "was not arrested." Def. Br., Ex. G. Meehan disclosed this information to Nabelsi in an email one day later, stating that "[w]e able to get this [charge] deleted from the system so it will not be on your record, not even as a dismissal," and "[a]lthough you were taken to the Holmdel police station, you were not brought out and processed at the Monmouth County Correctional Institution which is what [the statement 'defendant has not been arrested'] was referring to." *Id.*, Ex. 3; Compl., ¶ 52. Nevertheless, on January 21, 2020, Nabelsi's prospective employer (Southwest Airlines) flagged his arrest during a background check. *Id.* ¶ 57. Concerned, Nabelsi emailed Meehan. *Id.* ¶ 58. Jeffrey Ackerson, a lieutenant with HPD, eventually replied: "you were arrested by the [HPD] on August 27, 2019, and you were fingerprinted as part of the arrest processing procedure." *Id.* ¶ 59. Ackerson advised Nabelsi that he may apply for expungement to clear his name. Def. Br., Ex. 3.

Unsatisfied with how HPD and Meehan handled his arrest, Nabelsi filed a lengthy Complaint on December 31, 2020. ECF No. 1. The twelve-count Complaint fails to link any of its claims to specific defendants, and thus borders on impermissible group pleading. *See, e.g.*, *Sheeran v. Blyth Shipholding S.A.*, No. 14-5482, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015) (dismissing complaint because it "fails to separate out the liability for each defendant"); *Ingris v. Borough of Caldwell*, No. 14-855, 2015 WL 3613499, at *5 (D.N.J. June 9, 2015) ("[T]o the extent Plaintiff seeks to lump several defendants together without setting forth what each particular defendant is alleged to have done, he has engaged in impermissibly vague group pleading."). Group pleading is improper because it does not give proper notice or allow the court to separate out liability. *Shaw v. Housing Auth. of Camden*, No. 11-4291, 2012 WL 3283402, at *2 (D.N.J. Aug. 10, 2012) (finding that "[e]ven under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants") (citation omitted); *Murray v. Cty. of Hudson*, No. 17-2875, 2018 WL 3000333, at *4 (D.N.J. June 15, 2018) (same). This is particularly problematic in a § 1983 case, because that civil rights statute requires personal involvement. *See, e.g.*, *Rode v. Dellarciprete*, 845 F.3d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs."); *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006) (holding that a plaintiff must show that each and every defendant was "personally involved in depriving him of his rights") (alterations omitted).

Regardless, based on the facts alleged, I construe the following counts to involve the following defendants. Count I alleges false arrest under 42 U.S.C. § 1983 against Officer Gallogly and Meehan. Compl., ¶¶ 76-89. Count II alleges a due process violation under § 1983, on the grounds that non-defendant Officer Imperato did not read Nabelsi his *Miranda* rights before taking (what Nabelsi insists are) incriminating statements over the phone, Officer Gallogly impugned

Nabelsi's reputation by creating a "permanent arrest record," and Meehan misled Nabelsi about his arrest. *Id.* ¶¶ 90-99. Count III alleges abuse of the legal process against Officer Gallogly and Meehan for much the same. *Id.* ¶¶ 100-05. Count IV alleges *Monell* liability against HPD (through Holmdel Township) for what Nabelsi calls an "ask first, *Miranda* later"[3] policy, *id.* ¶¶ 106-13, while Count V alleges supervisory liability against "yet to be identified Defendant Does." *Id.* ¶¶ 114-19. Count VI alleges a violation of the New Jersey Civil Rights Act ("NJCRA"), which is the state law version of § 1983, against Officer Gallogly and Meehan. *Id.* ¶¶ 120-25. Count VII alleges negligence. *Id.* ¶¶ 133-36. Count VIII alleges that Defendants placed Nabelsi in a "false light before the public and prospective employers." *Id.* ¶¶ 137-43. Count IX alleges interference with economic advantage. *Id.* ¶¶ 144-49. Count X alleges *respondeat superior* liability against HPD in connection with all state law claims. *Id.* ¶¶ 150-54. And Count XI alleges that Defendants conspired to deprive Nabelsi of his civil rights, *id.* ¶¶ 155-59, while Count XII alleges aiding and abetting liability. *Id.* ¶¶ 160-64.

Defendants moved to dismiss the entire Complaint on April 16, 2021. ECF No. 6. The gist of their motion is that Nabelsi fails as a matter of law to plead false arrest because Officer Gallogly detained Nabelsi pursuant to a facially valid warrant, which Meehan issued based on probable cause. Also, according to Defendants, Nabelsi cannot plead a due process violation because he was neither in custody nor subjected to interrogation while on the phone with Officer Imperato on August 23, 2019, and cannot identify any false or defamatory statements which harm his reputation. Defendants further contend that Nabelsi does not so much as identify an official HPD custom or policy to support *Monell* liability, much less aver plausible factual allegations that the custom or policy deprived him of a constitutional right, and likewise cannot name any supervisors

---

3       Count VII alleges negligent hiring, training, and supervision, but does not specify a cause of action. I construe this Count as coextensive with Count IV and consider them together.

or specific unconstitutional acts they committed. Finally, Defendants argue that all claims against Meehan must be dismissed under the Eleventh Amendment because municipal courts are arms of the state for sovereign immunity purposes.[4]

## II.    LEGAL STANDARD

A court may dismiss an action under Fed. R. Civ. P. 12(b)(6) if a plaintiff fails to state a claim upon which relief can be granted. When evaluating a Rule 12(b)(6) motion, I must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives dismissal if it contains sufficient factual matter, accepted as true, to "state a claim . . . that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether a complaint is plausible, I conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, I "take[] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, I identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 679). For example, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678, nor am I compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Third, "where there are well-pleaded factual allegations, [I] should assume their veracity and then determine whether

---

4    Because I decline to exercise supplemental jurisdiction over Nabelsi's state law claims, *see infra*, I only discuss the parties' arguments as to the federal issues.

they plausibly give rise to an entitlement for relief." *Santiago*, 629 F.3d at 131 (quoting *Iqbal*, 556 U.S. at 680). This is a "context-specific task that requires [me] to draw on [my] judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III.   DISCUSSION

42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.*

Section 1983 "is not itself a source of substantive rights," but "a method" through which one can vindicate other federal or constitutional guarantees. *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). As such, to survive dismissal, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality); *Gibson v. Superintendent of NJ Dep't of L. & Pub. Safety-Div. of State Police*, 411 F.3d 427, 433 (3d Cir. 2005).

There is no question here that all Defendants are state actors, so the dispute centers on whether they violated a federal right. Nabelsi asserts five claims to this end: false arrest (in violation of the Fourth Amendment),[5] deprivation of due process (in violation of the Fifth and

---

5       At times, Nabelsi characterizes his false arrest claim as a false imprisonment claim. "False arrest and false imprisonment are 'nearly identical claims' that are 'generally analyzed together.'" *Karkut v. Target Corp.*, 453 F. Supp. 2d 874, 879 (E.D. Pa. 2006) (quoting *Brockington v. Phila.*, 354 F. Supp. 2d 563, 570 n.8 (E.D. Pa. 2005) (further citation omitted)).

Fourteenth Amendments), *Monell* liability, supervisory liability, and abuse of process. I address

each in turn. I also address Nabelsi's aiding and abetting and conspiracy claims, to the extent that

they assert federal causes of action, for instance under §§ 1985 and 1986. Finally, I address the

merits of the federal claims against Meehan, who may be sued in her individual/personal capacity

but not in her official capacity consistent with the Eleventh Amendment.[6]

### A.  False Arrest in Count I

A claim under § 1983 for false arrest is grounded in the Fourth Amendment protection

against unreasonable seizures. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995);

*Garcia v. County of Bucks*, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001). To survive dismissal on a

false arrest claim, a plaintiff must allege facts showing that he was arrested without probable cause.

*Mikhaeil v. Santos*, 646 Fed. App'x. 158, 162 (3d Cir. 2016); *Groman*, 47 F.3d at 634; *Dowling v.

City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988) ("The proper inquiry in a § 1983 claim based on

---

6       The Eleventh Amendment bars individuals from suing states in federal court without their consent.
*Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996). "[A] suit against a state official in his or her
official capacity is not a suit against the official but rather a suit against the official's office," and in turn,
the state. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). If Nabelsi sued Meehan in her official
capacity, she would benefit from a sovereign immunity defense, as municipal courts are arms of state
government. *See, e.g.*, *In re Almon Raphael*, 238 B.R. 69, 80-82 (Bankr. D.N.J. 1999); *Johnson v. State of
New Jersey*, 869 F. Supp. 289, 296-97 (D.N.J. 1994) (holding that New Jersey Superior Court is protected
by the Eleventh Amendment); *see also Kelly v. Municipal Courts of Marion County, Indiana*, 97 F.3d 902,
907-08 (7th Cir. 1996) (holding that municipal court is a unit of the judicial branch of the State of Indiana
and that a municipal court judge is a state officer entitled to immunity); *Franceschi v. Schwartz*, 57 F.3d
828, 831 (9th Cir. 1995) (holding that municipal court is an arm of the state and protected from suit); *Harris
v. Missouri Court of Appeals*, 787 F.2d 427, 429 (8th Cir. 1986) (holding that courts as entities are not
vulnerable to § 1983 suits, because they are protected by immunity under the Eleventh Amendment). But
because by all accounts Nabelsi sues Meehan in her personal/individual capacity, Compl., ¶ 5, sovereign
immunity does not bar the suit. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 163 (1985); *Foster v.
McLaughlin*, 203 F. Supp. 3d 483, 488 (E.D. Pa. 2016). That said, "[a] judicial officer in the performance
of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Azubuko v.
Royal*, 443 F.3d 302, 303 (3d Cir. 2006); *Capogrosso v. The Supreme Ct. of New Jersey*, 588 F.3d 180, 184
(3d Cir. 2009); *see also Stump v. Sparkman*, 435 U.S. 349, 356–57, 360 (1978). This may apply to officials
who exercise "judge-like functions." *Franceschi v. Schwartz*, 57 F.3d 828, 830 (9th Cir. 1995). Meehan
could be considered such an official, insofar as she issues warrants based on authority delegated to her by
the judges of the municipal court. However, because the parties do not brief that issue, I do not consider it
at this time, and I dismiss the federal claims against Meehan on the merits in any case.

false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe [as such].").  "The probable-cause standard is incapable of precise definition or quantification." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). What is clear is that reasonableness is "the touchstone," *Hill v. California*, 401 U.S. 797, 804 (1971), there need not be "the same type of specific evidence of each element of the offense as would be needed to support a conviction," *Adams v. Williams*, 407 U.S. 143, 149 (1972); *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979), it "depends on the totality of the circumstances," *Pringle*, 540 U.S. at 371, and it does not impose "a high bar." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Kaley v. United States*, 571 U.S. 320 (2014)). All told, probable cause for an arrest exists "whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002).

Nabelsi mainly alleges that Officer Gallogly lacked probable cause to arrest him when he reported to HPD to retrieve his belongings from his residence. Nabelsi also alludes to a challenge to Meehan's underlying probable cause determination and the evidence in Officer Imperato's affidavit. None carries the day. To start, a facially valid warrant generally establishes probable cause for an arrest. *See, e.g.*, *Baker*, 443 U.S. at 144; *Illinois v. Krull*, 480 U.S. 340, 367 (1987); *Graham v. Connor*, 490 U.S. 386, 289 (1989); *McCabe v. City of Phila.*, 76 Fed. App'x. 464, 466 (3d Cir. 2003) (Alito, J.) (affirming an arrest made pursuant to facially valid warrant is typically constitutional); *Young v. City of Hackensack*, 178 Fed. App'x. 169, 171-72 (3d Cir. 2006) (affirming summary judgment in favor of defendants where warrant "appear[ed] on its face to be valid"); *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) (holding that, for an arrest

9

to be justified, "[p]robable cause need only exist as to any offense that could be charged under the circumstances"); *Kis v. Cty. of Schuylkill*, 866 F. Supp. 1462, 1469 (E.D. Pa. 1994) ("It is well-settled that probable cause to arrest generally exists when a police officer makes an arrest pursuant to a warrant which meets the requirements of the Fourth Amendment."); *Lawson v. Pennsylvania SPCA*, 124 F. Supp. 3d 394, 405 (E.D. Pa. 2015) (collecting cases).

Officer Gallogly arrested Nabelsi based on the face of the warrant, which Meehan issued a week earlier based on Officer Imperato's representations. At the time of the arrest, Officer Gallogly had no "independent" duty "to investigate" the grounds for the warrant or to inquire into Nabelsi's claims of innocence (to the extent he made any). *Baker*, 443 U.S. at 144-46; *Campbell v. MclLwain*, No. 09-1156, 2009 WL 2176241, at *4 (D.S.C. July 20, 2009) ("It is not the duty of the arresting officer to assess guilt or innocence, but merely to serve the warrant . . . . An arresting officer is generally entitled to rely on a facially valid warrant in effecting an arrest."). And there are no allegations, much less plausible indications, that Meehan did not issue a facially valid warrant in the first place.[7] *Dorn v. Town of Prosperity*, 375 Fed. App'x. 284, 286 (4th Cir. 2010) (finding same).

---

7       A warrant that correctly names the person to be arrested generally satisfies the Fourth Amendment, and no other description of the arrestee is usually necessary. *Powe v. Chicago*, 664 F.2d 639, 645 (7th Cir.1981); *Cooper v. City of Chester*, 810 F. Supp. 618, 621 (E.D. Pa. 1992); *Kis*, 866 F. Supp. 1469. What is more, in New Jersey, a Municipal Court Administrator such as Meehan may lawfully administer oaths and issue warrants when deputized to do so by a judge of that court. N.J.S.A. § 2B:12-21a; *Lemons v. Atlantic City Police Dept.*, No. 06-3440, 2009 WL140514, at *3 (D.N.J. 2009) ("Pursuant to New Jersey law, the Deputy Court Administrator is authorized to issue warrants."), *aff'd*, 347 Fed. App'x. 722, 725 (2009) ("A deputy court administrator is authorized to issue warrants under New Jersey law."); *State v. Ambroselli*, 356 N.J. Super. 377, 382-83 (App. Div. 2003) (same) (cited approvingly in *Lemons*, 347 Fed. App'x. at 725); *Bankes v. Felice*, No. 05-356, 2006 WL 1765074, at *5 (D.N.J. June 26, 2006) (holding that "a municipal court administrator . . . is authorized (both under New Jersey Court Rules and by New Jersey Statute) to determine probable cause and issue an arrest warrant"); N.J. Ct. R. 3:2-3(a) (setting forth the elements for a valid arrest warrant, including that "the warrant shall be signed by the judge, clerk, deputy clerk, municipal clerk, municipal court administrator, or deputy court administrator," as here). Nabelsi all but concedes this. *See, e.g.*, Pl. Br., at 31 ("Defendants have shown that a Court Administrator is empowered to sign warrant applications."). This dispenses with Nabelsi's claim that Meehan could not "walk[], talk[], and act[] like a judge" in issuing the warrant. Pl. Br., at 31.

Of course, "an arrest warrant issued by a magistrate or judge does not, in itself, shelter an officer from liability for false arrest." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)); *Rothermel v. Dauphin Cty., Pennsylvania*, No. 16-1669, 2020 WL 1467267, at *5 (M.D. Pa. Mar. 26, 2020) ("[A]n erroneously issued warrant—that is, one that is facially valid but genuinely invalid—does not supply probable cause for arrest."), *aff'd*, 861 Fed. App'x. 498 (3d Cir. 2021); *Berg v. County of Allegheny*, 219 F.3d 261, 271 (3d Cir. 2000) (same). "[A] plaintiff may succeed in a § 1983 action for false arrest made pursuant to a warrant if the plaintiff [alleges]: (1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood *in applying for a warrant*; and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'" *Wilson*, 212 F.3d at 786-87 (citation omitted) (emphasis added). That is, Nabelsi may defeat dismissal despite the facially valid warrant if he offers facts plausibly suggesting that "[Officer Imperato] recklessly disregarded the truth in his warrant application." *Id.* at 786.

No facts rise to that level here. For one thing, Nabelsi does not allege that Officer Imperato had "a high degree of awareness of probable falsity" with respect to any assertion he made in the warrant application, or otherwise "doubt[ed] the accuracy" of his statements. *Lippay v. Christos*, 996 F.2d 1490, 1501 (3d Cir. 1993); *United States v. Clapp*, 46 F.3d 795, 801 n.6 (8th Cir. 1995) (holding that an assertion is made with reckless disregard when "viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported"). Likewise, Nabelsi does not allege that Officer Imperato omitted any information, or that his "storytelling involve[d] an element of selectivity," which is generally permissible in any event. *Wilson*, 212 F.3d at 787 ("We cannot

11

demand that police officers relate the entire history of events leading up to a warrant application with every potentially evocative detail that would interest a novelist or gossip."). In other words, Nabelsi does not point to any "fact in [Officer Imperato's] ken that '[a]ny reasonable person would have known . . . was the kind of thing [Meehan] would wish to know.'" *Id.* at 788 (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)). Nabelsi does not even allege "negligence or innocent mistake," which is nonetheless "insufficient" as a matter of law to vitiate a probable cause finding. *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

Nabelsi instead contends that the evidence on which Officer Imperato relied to apply for the warrant failed to "show[] that [Nabelsi] was in contempt of the [TRO]" or that he actually "prompted his attorney to call his *pro se* ex-wife." Pl. Br., at 22. This attack on the underlying probable cause finding falls short for two reasons. First, even if Nabelsi is correct that Officer Imperato lacked probable cause, that is not enough to call into question Officer Gallogly's reliance on the facially valid warrant. Nabelsi must plausibly allege knowing and reckless disregard for the truth, which he has not done (and cannot do). Second, it appears that Officer Imperato *had* probable cause. Def. Br., Ex. E. Nabelsi's wife reported a call from a lawyer asking if Nabelsi could see his children, contrary to the terms of the TRO; when questioned, Nabelsi refused to tell Officer Imperato whether he told his lawyer to call or where he lived; he then gave Officer Imperato the same name and number for his lawyer as his wife reported; and Officer Imperato could not reach anyone at that number. Based on those facts, which Nabelsi does not challenge as untrue, a person of reasonable caution in Officer Imperato's position could have reasonably suspected that Nabelsi violated the TRO. In turn, a reasonable person in Meehan's position could have relied on Officer Imperato's representations in issuing the warrant. Nabelsi's false arrest claim therefore fails, *Druckenmiller v. United States*, 548 F. Supp. 193, 194-95 (E.D. Pa. 1982) ("The law is clearly

established that law enforcement officers who effect an arrest pursuant to a facially valid arrest warrant are immune from suit alleging a constitutional."), and I **DISMISS** Count I with prejudice, since there is no set of facts Nabelsi could allege to revive this claim.

### B. Due Process in Count II

In Count II, Nabelsi first alleges that Officer Imperato's "corresponding with [him]" on August 23, 2019, without revealing that he was "the suspect of an investigation," Pl. Br., at 4, 29, "attempting to interrogate [him] via cell phone as a suspect . . . without ever contacting [his] attorney," *id.* at 35, and using statements from the phone call "to incriminate him" without "any *Miranda* or other warning," *id.* at 4, all run afoul of the Due Process Clause. Compl., ¶¶ 91-92.

As an initial matter, Officer Imperato is not a defendant in this matter, and Meehan was not personally involved in the phone call in the sense of § 1983, which is fatal to Nabelsi's claim. His claim would nevertheless fail as a matter of law. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that the Fifth Amendment's privilege against self-incrimination prohibits admitting into evidence statements given by a suspect during "custodial interrogation" without his being "adequately and effectively apprised of his rights." *Id.* at 444, 467. Interrogation under *Miranda* is construed broadly: it refers not just to express questioning but any "words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit and incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301-02 (1980). "Custodial," however, is construed narrowly: it means that a suspect is unfree to leave a police-dominated environment, akin to a formal arrest. *See, e.g.*, *Thompson v. Keohane*, 516 U.S. 99, 112 (1995); *California v. Beheler*, 463 U.S. 1125, 1125 (1983); *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam); *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam); *Yarborough v. Alvarado*, 541 U.S. 652, 662-

63 (2004); *Berkemer v. McCarty*, 468 U.S. 420, 442 & n.35 (1984). The inquiry into "custody" focuses on whether "all of the circumstances" "would have affected how a reasonable person" understands his liberty to end the questioning. *Stansbury*, 511 U.S. at 323, 325.

Here, it borders on the frivolous for Nabelsi to suggest that he was subject to custodial interrogation during his call with Officer Imperato on August 23, 2019. Regardless of whether Officer Imperato's line of questioning constituted interrogation for purposes of *Miranda*, nothing about the call would lead a reasonable person to feel physically restrained or detained, or otherwise compelled to make self-incriminating statements, nor would such a call "induce a frighteningly high percentage of people to confess to crimes they never committed." *Corley v. United States*, 556 U.S. 303, 321 (2009) (citation omitted). While I do not doubt that even a police interview conducted over the phone has "coercive aspects to it," *J.D.B. v. North Carolina*, 564 U.S. 261, 268 (2011), the warning mandated by *Miranda* is intended to stop "incommunicado interrogation of individuals in a police-dominated atmosphere," 384 U.S. at 445, which generates "inherently compelling pressures [that] work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Id.* at 467. Whatever the tactics Officer Imperato employed over the phone to question Nabelsi, *Illinois v. Perkins*, 496 U.S. 292, 297 (1990) ("Ploys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not [impermissible]."), as pled, *Miranda*-like circumstances clearly were absent. *Berkemer*, 468 U.S. at 437 ("Fidelity to the doctrine announced in *Miranda* requires that it be enforced strictly, but only in those types of situations in which the

concerns that powered the decision are implicated.").[8] As such, I reject Nabelsi's *Miranda* claim, and it is dismissed with prejudice.[9]

Second, in his briefs (but nowhere in his Complaint), Nabelsi alleges that Defendants caused him to "suffer a harm to his reputation" and ability to earn a living, which are "constitutionally protected liberty interest[s]," by creating a "permanent arrest record." Pl. Br., at 25. Seemingly as part of this claim, Nabelsi alleges that Meehan misled him as to whether an arrest record would exist. Nabelsi is not permitted to add a claim to his Complaint via his opposition papers, *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."), but I nevertheless find his reputational injury claim unavailing.

While the Supreme Court held in *Wisconsin v. Constantineau*, 400 U.S. 433 (1971), that people have a protectable liberty interest in their good name, reputation, honor, and integrity, *id.* at 437, "reputation *alone* is not an interest protected by the Due Process Clause." *Versarge v. Township of Clinton, New Jersey*, 984 F.2d 1359, 1371 (3d Cir. 1993) (emphasis added). Rather, to make out a due process claim based on reputation, a plaintiff must show a stigma *and* deprivation of some additional right. *Paul v. Davis*, 424 U.S. 693, 701 (1976); *Siegert v. Gilley*, 500 U.S. 226, 233-34 (1991); *Edwards v. California Univ. of Pennsylvania*, 156 F.3d 488, 492 (3d Cir. 1998); *Kelly v. Borough of Sayreville*, 107 F.3d 1073, 1077-78 (3d Cir. 1997). This

---

8      Because the remedy for a *Miranda* violation is excluding a defendant's statements from evidence, there is no remedy to be sought here since the contempt charge has been dismissed.

9      One of Nabelsi's state law claims is that Officer Gallogly should have informed him that he was a suspect in a contempt case before questioning him over the phone, pursuant to N.J.S.A. § 2A:84A-19, *State v. Muhammah*, 182 N.J. 551 (2005), and *State v. A.G.D.*, 176 N.J. 56 (2003). Nabelsi grounds this claim in part on the fact that New Jersey's privilege against self-incrimination "offers broader protection than its federal counterpart under the Fifth Amendment." *Muhammah*, 182 N.J. at 568. Because I do not reach the state claims in this case, my *Miranda* analysis should not be read to imply any opinion on the merits of Nabelsi's § 2A:84A-19 claim.

is the "'stigma-plus' test." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006). "Stigma" means the government action involves a "publication that is substantially and materially false." *Ersek v. Twp. of Springfield*, 102 F.3d 79, 83-84 (3d Cir. 1996). In addition, "the disputed or false statements must harm the plaintiff," or else there would be "no useful purpose" to the remedy, which is a "name-clearing hearing." *Id.* at 84. "Plus" means some other protectible interest, such as a property interest guaranteed by the Due Process Clause or state law.[10]

Taking all allegations in the Complaint as true, Nabelsi's claim fails every applicable element. First, he does not allege that the arrest record itself, or any aspect of it, is false, which is necessary to satisfy the "stigma" prong. *Hill*, 455 F.3d at 236 (collecting cases).[11] On the contrary, Officer Gallogly *did* arrest Nabelsi on contempt charges related to the TRO and domestic violence allegations. The same is true of Meehan's correspondence with Nabelsi post-arrest: she accurately stated that, by "not arrested," the prosecutor's letter meant only that Nabelsi was not removed to and processed in county jail, and that *the contempt charge* would not appear on Nabelsi's record. Def. Br., Ex. 3; Compl., ¶ 52. Second, Nabelsi does not allege any "plus" to accompany the purported reputational injury. *See, e.g.*, *D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, 552 Fed. App'x. 110, 113 (3d Cir. 2014) ("[R]eputation damage is not actionable unless 'it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by

---

10    Beyond this, it is unclear what constitutes a sufficient "plus." *Ersek*, 102 F.3d at 83 n.5 ("What satisfies that 'plus,' however, is uncertain."); *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1106-10 & nn.14-15, 18 (D.C. Cir. 1985) (providing a detailed analysis of this issue and the difficulties it presents); *Baraka v. McGreevey*, 481 F.3d 187, 208-10 & n.17 (3d Cir. 2007) (noting "some confusion whether the additional 'more tangible interest' must be 'a protectible property interest,' or whether "'something less than a property interest, independently protected by the Due Process Clause, could be [] sufficient'"). As such, even if Southwest did not hire Nabelsi because of the arrest record, it is far from certain whether that would qualify as "the kind of foreclosure of opportunities amounting to a deprivation of liberty." *Roth*, 408 U.S. at 574 n.13.

11    Defendants claim that the arrest record was not "made publicly" or "published" either, but I disagree. As alleged, it appears that the government disseminated the arrest record such that Southwest Airlines obtained it in connection with Nabelsi's background check. That constitutes disclosure.

state law or the Constitution.'") (quoting *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1989)). While Nabelsi states that Southwest Airlines surfaced the arrest record during his application process, importantly, he does not claim that Southwest declined to hire him, let alone *because of* the record, or that any other harm flowed from it. *Cf. Hill*, 455 F.3d at 236 ("The creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.'"). Third, to the extent that Nabelsi's "plus" is emotional distress or psychological injury associated with the record or with the fact that his employer learned about it, Compl., ¶ 69, neither "is [ ] sufficient to satisfy the 'plus' element of the 'stigma-plus' test." *Good v. City of Sunburn*, 352 Fed. App'x. 688, 692 (3d Cir. 2009). Finally, even assuming a stigma and a "plus" exist, Nabelsi is not without a remedy: he may apply for expungement to erase the record and clear his name, as indicated in Ackerson's email from January 31, 2020, which is sufficient process. *See, e.g.*, *Hill*, 455 F.3d at 236 & n.15 ("When such a deprivation occurs, the [plaintiff] is entitled to a name-clearing hearing."); *Otto v. Williams*, 704 Fed. App'x. 50, 55 (3d Cir. 2017) (holding that a criminal trial affords sufficient name-clearing opportunities).

Nabelsi's challenge boils down to the fact that he did not actually violate the TRO and in the end the prosecutor dismissed the contempt charge against him—that is, he again takes issue with the underlying probable cause determination. Yet, I "already concluded . . . that [Nabelsi] has failed to sufficiently allege a lack of probable cause for his arrest." *Hunt v. Smith*, No. 20-00464, 2021 WL 1774095, at *7 (M.D. Pa. Mar. 30, 2021) (concluding same), *report and recommendation adopted sub nom.*, *Hunt v. City of Wilkes Barre*, No. 20-464, 2021 WL 1758704 (M.D. Pa. May 4, 2021). As such, I reject Nabelsi's Due Process claims and **DISMISS** Count II with prejudice, since no set of facts could allege a violation.

*C.* Monell *Liability in Count IV*

17

Nabelsi next asserts *Monell* liability against Holmdel Township. "[A] plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused [his] injury."[12] *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978). An official policy is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers." *Monell*, 436 U.S. at 690. "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996) (quotations and citation omitted). Customs are "such practices of state officials . . . [as are] so permanent and well-settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)). Together with a policy or custom, "liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Negligence will not suffice. *Bryan Cty.*, 520 U.S. at 407. This is a "high bar." *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021). Finally, the municipality must be the "moving force" behind the policy or custom, *id.* at 404, meaning that there must be proof of a "direct causal link," *City of Canton v. Harris*, 489 U.S. 378, 385 (1989), so as to "guard[] against backsliding into *respondeat superior* liability." *LaPorta*, 988 F.3d at 987.

These more complicated issues aside, Nabelsi's *Monell* claim fails at the threshold because he has not established that "[his] harm was caused by a constitutional violation." *Collins v. City of*

---

12   Police departments are governmental subunits, which are not distinct from the municipalities of which they are apart. *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997). To that extent, they are not proper parties to an action like the present one. But this does not pose an obstacle to Nabelsi's Complaint because he has sued Holmdel Township, not HPD.

*Harker Heights*, 503 U.S. 115, 120 (1992); *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.") (emphasis in original); *LaPorta*, 988 F.3d at 987 ("[T]he requirement that the plaintiff must initially prove that he was deprived of a federal right [is settled and familiar]. That's the first step in every § 1983 claim, including a claim against a municipality under *Monell*. A *Monell* plaintiff must establish that he suffered a deprivation of a federal right *before* municipal fault, deliberate indifference, and causation come into play.") (emphasis in original); *Grazier v. City of Phila.*, 328 F.3d 120, 124 (3d Cir. 2003) (disallowing liability on a failure to train theory where a jury determined that the underlying conduct did not violate plaintiff's rights). Because Nabelsi has not sufficiently pled a false arrest or a due process deprivation, he simply "did not suffer a constitutional violation" for which Holmdel Township could be liable through a policy or custom. *McCabe*, 76 Fed. App'x. at 465 (Alito, J.); *Ash v. Twp. of Willingboro*, No. 10-1900, 2012 WL 6623986, at *4 (D.N.J. Dec. 18, 2012) (collecting cases holding same); *Johnson v. City of Phila.*, 105 F. Supp. 3d 474, 482 (E.D. Pa. 2015) ("[A] municipality cannot be found liable on a *Monell* claim where there has been no underlying violation of rights under § 1983."), *aff'd*, 837 F.3d 343 (3d Cir. 2016).

Regardless, "courts within the Third Circuit have dismissed [ ] bareboned *Monell* allegations" exactly like those in Nabelsi's Complaint, which merely recite the elements of a *Monell* violation and assume without demonstrating that each element is met. *Townsend v. City of Chester*, No. 19-1023, 2020 WL 4347368, at *14 (E.D. Pa. July 29, 2020); *see, e.g.*, *Langford v. Gloucester Twp. Police Dept.*, No. 16-1023, 2016 WL 7130912, at *6 (D.N.J. Dec. 7, 2016) (dismissing *Monell* claim where plaintiff alleged that township and police department "had

policies and procedures of relying on uncorroborated statements, not verifying facts, willfully disregarding the constitutional rights of New Jersey citizens, arresting citizens without probable cause, and failing to investigate cases," because they "fail to identify any particular official statements, ordinances, regulations, or decisions that amount to a policy, and also fails to mention the existence of previous, similar constitutional violations to show a custom"); *Jacobs v. Palmer*, No. 14-5797, 2015 WL 1033294, at *5-6 (E.D. Pa. Mar. 10, 2015) (finding that allegations regarding County's failure to train, supervise, discipline, or terminate officers regarding past similar violations of constitutional rights were insufficient to state a *Monell* claim because plaintiffs did not specify the custom or policy, identify the relevant municipal decisionmaker, or allege facts to show a pattern of similar violations by untrained employees, which is "ordinarily necessary"); *Collins v. Borough of Trainer*, No. 13-7613, 2014 WL 2978312, at *5 (E.D. Pa. July 1, 2014) (finding that complaint only pled conclusory allegations insufficient to state a *Monell* claim where plaintiff alleged that "Defendants developed and maintained policies, practices, procedures and customs exhibiting deliberate indifference to the Constitutional rights of persons . . . which caused violations of Plaintiff's constitutional and other rights as aforesaid"); *Mirra v. Fynes*, No. 13-1677, 2014 WL 716692, at *7 (E.D. Pa. Feb. 25, 2014) (dismissing *Monell* claim and finding that plaintiff failed to include sufficiently specific allegations setting forth a Township policy or custom, or specific failure to train, which led to the alleged constitutional violations). Accordingly, I **DISMISS** Count IV with prejudice.

D.  *Supervisory Liability in Count V*

Nabelsi's supervisory liability claim in Count V fails for the same reason as his *Monell* claim: there is no viable underlying violation, and as such, no supervisor could be liable for personal involvement in it, like actual direction, acquiescence, or failure to monitor/oversee. *See,*

*e.g.*, *Ash*, 2012 WL 6623986, at *4. In addition, to hold a supervisory official liable under § 1983, a plaintiff must: "1) identify with particularity what the supervisory official failed to do that demonstrates his deliberate indifference; and 2) demonstrate a close causal relationship between the identified deficiency and the ultimate injury." *Kis*, 866 F. Supp. at 1474; *see also Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989); *City of Canton*, 489 U.S. at 489. Applying these standards, Nabelsi's claim is deficient. Not only does he fail to identify a specific supervisor involved in approving Officer Imperato's warrant application or in sanctioning Officer Gallogly's arrest, Compl., ¶ 115 (referencing "yet to be identified Defendant Does"), but he offers no specific actions that these officials took or did not take, much less actions sufficient to indicate deliberate indifference to his constitutional rights. *See, e.g.*, *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222-23 (3d Cir. 2015) (holding that a government official is "only liable for his or her misconduct"); *Rode*, 845 F.2d at 1207 (requiring plaintiff to plead with "appropriate particularity" that each defendant was personally involved in wrongful conduct); *Scheing v. Fountain*, 729 Fed. App'x. 175 178 (3d Cir. 2018) (requiring "allegations of personal direction or of actual knowledge of acquiescence" to survive dismissal). Accordingly, I **DISMISS** Count V with prejudice.

### E.   *Abuse of Process in Count III*

Nabelsi also brings an abuse of process claim. Abuse of process differs from malicious prosecution in that it entails a situation where a "prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law." *Napier v. City of New Castle*, 407 Fed. App'x. 578, 582 (3d Cir. 2010) (quoting *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989)). To survive dismissal, a plaintiff must plausibly allege that the defendant "(1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused the plaintiff." *Id.*; *Hunt*, 2021 WL 1774095, at *6. Nabelsi's

Complaint contains no facts suggesting that Defendants abused the legal process *after* Meehan issued the warrant or Officer Gallogly effected the arrest. Nor could it, since the prosecutor dismissed the charge one day after Nabelsi was arrested and one week after the warrant was activated, and Nabelsi was in custody for less than an hour. If anything, Nabelsi takes issue with the *initiation* of the warrant which led to his arrest, a claim sounding in malicious prosecution, which he has not pled. *Hunt*, 2021 WL 1774095, at *6 ("Instead, Hunt alleges that Smith wrongfully initiated the criminal process by writing an alleged false affidavit, arrested him on those false charges."). In other words, Nabelsi cannot allege that Officer Gallogly or Meehan originated legal process against him legitimately, then illegitimately corrupted that process to harm him. Accordingly, I **DISMISS** Count III with prejudice.

### F. Aiding and Abetting in Count XI and Conspiracy in Count XII

Finally, Nabelsi asserts aiding and abetting liability in Count XI and conspiracy in Count XII. Nabelsi does not indicate whether these are federal or state claims or point to any specific cause of action associated with them, nor does he provide supporting facts from which I can discern the applicable body of law. The parties do not even discuss these Counts in their briefs. Regardless, to the extent that they raise federal claims, they both fail. Aiding and abetting liability does not appear to be a recognized, independent § 1983 theory. *Rode*, 845 F.2d at 1207-08 ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."); *Alexander v. Fritch*, 396 Fed. App'x. 867, 874-75 (3d Cir. 2010) (per curiam) ("Individual liability can be imposed under § 1983 only if the defendant played an 'affirmative part' in the alleged misconduct.") (citation omitted).

On the other hand, under 42 U.S.C. §§ 1985 and 1986, a plaintiff may bring a claim for a conspiracy to violate rights protected by § 1983. *Chavarriaga*, 806 F.3d at 224. But this type of

claim still requires "some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009). Indeed, "a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights" specifically, not merely to do the acts forming the basis of the injury. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) (citation omitted). Nabelsi here has alleged only that Officer Imperato applied for a warrant (based on probable cause), Meehan issued it, and Officer Gallogly effected an arrest pursuant to it, without any other actions or communications, and certainly without any indication of a particular agreement to infringe Nabelsi's Due Process or Fourth Amendment rights. Such a combination of events cannot support an inference of conspiratorial conduct as a matter of law. *Cf. Abbott v. Latshaw*, 164 F.3d at 141, 147-48 (3d Cir. 1998) (holding plaintiff stated claim for § 1983 conspiracy to violate due process rights between state actors, constable and police officers, and ex-wife, by alleging state actors agreed to help ex-wife obtain plaintiff's vehicle by ordering plaintiff to immediately relinquish possession or be arrested).

More importantly, because I have already dismissed the underlying § 1983 claims, there is no injury Defendants could have conspired to create, *i.e.*, nothing to form the object or predicate of a conspiracy. *See, e.g.*, *Chavarriaga*, 806 F.3d at 224 ("Inasmuch as appellant did not plead a valid § 1983 claim against either Chiesa or Lanigan . . . her §§ 1985 and 1986 claims against them fail as well."); *Young v. New Sewickley Twp.*, 160 Fed. App'x. 263, 267 (3d Cir. 2005) ("Without sufficiently pleading an underlying violation of Young's civil rights by Chief Kryder, the complaint's conclusory allegation that New Sewickley Township and Chief Kryder conspired to violate Young's civil rights by furthering Chief Kryder's course of conduct also fail[s]."); *Watlington on behalf of FCI Schuylkill Afr. Am. Inmates v. Reigel*, 723 Fed. App'x. 137, 140 (3d

Cir. 2018) (per curiam) ("The conspiracy claim was premised on the First Amendment retaliation claim, and because that underlying claim was properly dismissed, the conspiracy claim had to be dismissed as well."); *Glass v. City of Phila.*, 455 F. Supp. 2d 302, 359 (E.D. Pa. 2006) (collecting cases holding that § 1983 conspiracy requires a predicate federal violation); *Saucon Valley Manor, Inc. v. Miller*, 392 F. Supp. 3d 554, 585-86 (E.D. Pa. 2019) ("[T]the court's holding above that the plaintiffs' equal protection claim fails as a matter of law precludes the plaintiffs from using it as the anchor violation for their civil conspiracy claim."). In short, "[t]here can be no civil conspiracy to commit an unlawful act under [§] 1983 where the plaintiff has not proven a deprivation of a constitutional or federal statutory right or privilege," as here. *Rink v. Ne Educ. Intermediate Unit 19*, 717 Fed. App'x. 126, 141 (3d Cir. 2017). Accordingly, insofar as they are federal claims, I **DISMISS** Counts XI and XII with prejudice.

G.  *State Law Claims in Counts VI, VIII, IX, X, XI, and XII*

Because I dismiss all federal law claims, and there is no diversity between the parties, I decline to exercise supplemental jurisdiction over the state claims in Counts VI, VIII, IX, and X (and XI and XII to the extent that they assert state causes of action). *See, e.g.*, *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *McCabe v. City of Phila.*, No. 01-3975, 2002 WL 32341787, at *6 (E.D. Pa. Nov. 13, 2002) (concluding same in context of false arrest claim), *aff'd*, 76 Fed. App'x. 464; *Simonson v. Borough of Taylor*, No. 18-2445, 2020 WL 1505572, at *14 (M.D. Pa. Mar. 30, 2020) (same); *Kis*, 866 F. Supp. at 1480 ("Because summary judgment has been granted in full for defendants Murton, Griffiths, and Kurtz, there is no need to address the merits of the plaintiff's state law claims against these defendants. Since all federal claims against these three defendants have been dismissed, the decision to entertain or dismiss the pendent state law claims is within our discretion. Courts should ordinarily decline to exercise supplemental jurisdiction over

state law claims when the federal claims are dismissed."); 28 U.S.C. § 1367 (providing that a court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the court has dismissed all claims over which it has original jurisdiction). In fact, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) (emphasis added).

## IV.   CONCLUSION[13]

For the foregoing reasons, I **DISMISS** with prejudice Counts I, II, III, IV, V, and VII, which contain Nabelsi's federal claims; **DISMISS** with prejudice Counts XI and XII, insofar as they assert federal causes of action; **REJECT** Meehan's sovereign immunity defense because Nabelsi has sued her in her individual/personal capacity; and **DECLINE** to exercise supplemental jurisdiction over the state law claims in Counts VI, VIII, IX, and X (and XI and XII to the extent that they assert state causes of action). Nabelsi may refile the state claims in state court within thirty (30) days of the date of the Order accompanying this Opinion pursuant to 28 U.S.C. § 1367(d).

**DATED**: November 30, 2021

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge

---

[13]     Nonetheless, I note that it is unfortunate how this series of events, including Nabelsi's contempt arrest and the confusion attached thereto, unfolded.